**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| SHARIFF MILLER, | ) | |
| | ) | No. 16 C 4387 |
| Petitioner, | ) | |
| v. | ) | Hon. Virginia M. Kendall |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Petitioner Shariff Miller's *pro se* Motion to Vacate, Set

Aside, or Correct his sentence pursuant to 28 U.S.C. § 2255 (the Petition). (Dkts. 1, 11). For the

reasons set forth below, Miller's Petition is denied. The Court further declines to certify any

issue for appeal pursuant to 28 U.S.C. § 2255(c)(2).

## BACKGROUND

Miller is no stranger to this Court. He has appeared on multiple statuses, two jury trials,

three sentencings, and numerous hearings. In 2008, Petitioner Shariff Miller was arrested in

Zion, Illinois, following a police search of his residence pursuant to a warrant which yielded

approximately forty (40) grams of crack cocaine, three firearms, and assorted ammunition. (Dkt.

8) at 1. Subsequent to his arrest, Miller was charged with possession of crack cocaine with intent

to distribute in violation of 21 U.S.C. § 841(a); felon-in-possession of a firearm in violation of 18

U.S.C. § 922(g); and possession of a firearm in furtherance of a drug offense in violation of 18

U.S.C. § 924(c). *Id.* Miller was convicted by a jury of all three offenses on May 26, 2009. *Id.*

On December 2, 2010, the Court sentenced Miller to 180 months on Count One, a concurrent

120 months on Count Two, and a consecutive 60 months on Count Three for a total of 240

months.  *See United States v. Miller*, 2009 WL 3156740, at *1 (N.D. Ill. Sept. 28, 2009).  On January 5, 2011, Miller appealed his conviction.  His conviction for being a felon-in-possession of a firearm was affirmed, but his convictions for possession of crack cocaine with intent to distribute and possession of a firearm in furtherance of a drug offense were reversed due to the admission of 404(b) evidence which the appellate court deemed to be overly prejudicial.  *See United States v. Miller*, 673 F.3d 688, 702 (7th Cir. 2012) (the First Appeal).  The Court had permitted the cross examination of Miller regarding his previous federal felony conviction for distributing heroin within the prior ten years pursuant to Fed. R. Evid. 609 and the Seventh Circuit held it to be overly prejudicial.  The Court held a second jury trial and did not permit the jury to hear the evidence regarding his prior conviction.

Miller was re-tried on the charges and he represented himself after being given numerous court-appointed attorneys with whom he refused to work.  A second jury again convicted him of possessing with intent to distribute at least 28 grams of cocaine base in violation of § 841(a)(1), this time without the information regarding the previous conviction; the jury acquitted him of possessing a gun in furtherance of a drug trafficking offense.  (Dkt. 8) at 2.  On November 20, 2013, the Court sentenced Miller to 200 months on the possession with intent to distribute count and 120 months (running concurrently) on the felon-in-possession count.  *Id.*  On November 27, 2013, Miller appealed (the Second Appeal) and his appointed appellate counsel Sara Varner challenged only the conditions of Miller's supervised release.  Meanwhile, the Government agreed to remand for sentencing consistent with *United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015) finding that Miller should have an opportunity to challenge the conditions of his supervised release.

Accordingly, on January 6, 2016, the Court re-sentenced Miller to 175 months on the possession with intent to distribute count and 120 months on the felon-in-possession count to run concurrently (the 2016 Resentencing) a significant reduction from his first sentence. (Dkt. 8) at 2. On January 28, 2016, Miller appealed his sentence (the Third Appeal) but he later withdrew the appeal. *Id.* Specifically, on April 11, 2016, Miller requested through counsel an order dismissing his appeal with prejudice so that he could instead pursue relief under 28 U.S.C. § 2255. *United States v. Miller*, No. 16-1169 (Dkt. 11) (7th Cir.). On April 15, 2016, he filed the instant timely § 2255 Motion. (Dkt. 1). After the Government had submitted its response, Miller filed an Amended Petition on May 31, 2016. (Dkt. 11).

## STANDARD OF REVIEW

Section 2255 allows a federal prisoner to move the district court that imposed his sentence to vacate it, set it aside, or correct it. *See* 28 U.S.C. § 2255. Such a motion seeks "an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Unlike a direct appeal, where a defendant may complain of nearly any error, § 2255 proceedings may only be used to correct errors that vitiate the sentencing court's jurisdiction, are of constitutional magnitude, or constitute a fundamental defect which inherently results in a complete miscarriage of justice. *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004); see 28 U.S.C. § 2255(a) ("A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court

which imposed the sentence to vacate, set aside or correct the sentence."). A § 2255 motion is not a substitute for a direct criminal appeal. *See Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007) (stating that a § 2255 motion is "neither a recapitulation of nor a substitute for a direct appeal"). And a "claim cannot be raised for the first time in a § 2255 motion if it could have been raised at trial or on direct appeal." *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016). However, challenges of ineffective assistance not waived by failure to raise them on direct appeal. *Gaylord v. United States*, 829 F.3d 500, 506 (7th Cir. 2016).

## DISCUSSION

Miller makes four arguments in support of his request to be re-tried and/or resentenced. Three of the arguments challenge Miller's classification as a career offender under the Sentencing Guidelines. Miller's other argument is that both his trial and appellate counsel were constitutionally ineffective in violation of the Sixth Amendment. *See* (Dkts, 1, 11).

## I.    Career Offender Enhancement

First, a challenge of the Court's application of the Sentencing Guidelines, rarely, if ever, constitutes a Constitutional concern cognizable under habeas relief. *See generally Hawkins v. United States*, 706 F.3d 820 (7th Cir. 2013) (holding that an erroneous determination that a petitioner is a career offender is not a cognizable error); *see also United States v. King*, 2011 WL 2416101, at *4 (N.D. Ill. June 14, 2011) ("[T]o the extent King challenges the court's application of the Sentencing Guidelines, such claim is not cognizable in a § 2255 proceeding.").

Second, under the Sentencing Guidelines, an adult defendant is a career offender if he is convicted of a crime of violence or a controlled substance offense and if he has at least two prior felony convictions for crimes of violence or controlled substance offenses. U.S.S.G. § 4B1.1(a). A "controlled substance offense" is defined as "an offense under federal or state law, punishable

by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b).

Miller was sentenced as a career offender on all three occasions because he was at least eighteen years old at the time of his federal convictions (one of which was for the possession with intent to distribute 28 grams or more of crack cocaine, which is a controlled substance offense) and he had two prior felony convictions for controlled substance offenses. The two qualifying convictions relied upon by the Court were a 1997 "Manufacture/Deliver Cocaine" conviction from Kenosha County, Wisconsin and a 2000 "Manufacture/Deliver" conviction from Lake County, Illinois.

Miller now argues that the Wisconsin conviction does not qualify as a "controlled substance offense" for purposes of the career offender Guidelines. Specifically, Miller was convicted of violating Wis. Stat. § 961.41(1)(cm)1 (1997). At the time of his crime, this statute read:

> 961.41 Prohibited acts A--penalties
>
> (1) **Manufacture, distribution or delivery.** Except as authorized by this chapter, it is unlawful for any person to manufacture, distribute or deliver a controlled substance or controlled substance analog. Any person who violates this subsection with respect to:
>
> * * *
>
> (cm) Cocaine or cocaine base, or a controlled substance analog of cocaine or cocaine base, is subject to the following penalties if the amount manufactured, distributed or delivered is:
>
> 1. Five grams or less, the person shall be fined not more than $500,000 and may be imprisoned for not more than 10 years.

Specifically, Miller makes three arguments about the statute: (1) the statute criminalizes "deliver" and the word "delivery is not a part of the definition in § 4B1.2 and therefore the Wisconsin law prohibits a range of conduct that is broader than the definition of "controlled substance offense"; (2) the arresting officer had discretion to charge either a felony or a misdemeanor based on the amount of drugs and chose to charge a felony because Miller was uncooperative and that discretion makes the statue unconstitutionally vague; and (3) he was charged with a miniscule amount of drugs, which, if he had been sentenced under the federal sentencing guidelines for possessing that miniscule amount, he would have received probation. (Dkt. 1) at 16–17; (Dkt. 11) at 2–3. In support of these arguments, Miller relies on *Descamps v. United States*, 570 U.S. 254 (2013), *Johnson v. United States*, 135 S. Ct. 2551 (2015), *Moncrieffe v. Holder*, 569 U.S. 184 (2013), and *Lopez v. Gonzales*, 549 U.S. 47 (2006).

### A.     Miller Procedurally Defaulted

The government asserts that Miller's challenges to his Wisconsin conviction are procedurally defaulted because he failed to raise them on direct appeal. (Dkt. 8) at 10–11. "Any claim that could have been raised originally in the trial court and then on direct appeal that is raised for the first time on collateral review is procedurally defaulted." *Delatorre v. United States*, 847 F.3d 837, 843 (7th Cir. 2017) (citing *Hale v. United States*, 710 F.3d 711, 714 (7th Cir. 2013) (holding that a claim that was not raised in the trial court or on direct appeal was "doubly defaulted" on collateral review)); *see also McCoy*, 815 F.3d at 295. There is no question that Miller failed to challenge his Wisconsin conviction as a qualifying conviction in support of the career-offender enhancement before this Court in any one of his three sentencings. *See, e.g.*, *United States v. Miller*, 2010 WL 4962808, at *6 (N.D. Ill. Dec. 1, 2010) (denying Miller's challenge to the presentence report's finding that he is a career offender based on

*Buchmeier v. United States*, 581 F.3d 561 (7th Cir. 2009) (en banc) and a restoration of rights notice he had received from the Illinois DOC and a discharge certificate he had received from the Wisconsin DOC); *United States v. Miller*, No. 08 CR 629 (Dkt. 173) (N.D. Ill.) (12/22/10 Sentencing Hrg. Tr. at 30:22–31:2) ("THE COURT: So relying on those two drug convictions and the fact that he was convicted for possession with intent, then he qualifies under the career offender guideline. Is there an objection to that? MS. BABICH: There's no technical objection, no, Your Honor."); *United States v. Miller*, No. 08 CR 629 (Dkt. 355) (N.D. Ill.) (11/10/13 Sentencing Hrg. Tr. at 57:23–58:4) ("So with that in mind, what is your position on the career offender? THE DEFENDANT: Well, the career offender, Your Honor. I will not object to being a career offender due to the two qualifying offenses. I spoke about the *Buckmeier* [sic] and the restoration of rights, which the Court overruled, so I will not go back through that matter."); *United States v. Miller*, No. 08 CR 629 (Dkt. 400) (N.D. Ill.) (1/6/16 Sentencing Hrg. Tr. at 6:9–13) ("THE COURT: Well, let me ask both of you before we go into 3353 factors, I assume you're not challenging the Guidelines calculations that were made in the previous sentencing? MS. VARNER: We are not."). Further, Miller himself concedes that he did not raise his career offender challenges in any one of his three direct appeals. *See* (Dkt. 1) at 5, 7, 9; (Dkt. 11) at 4 ("I failed to object to the Career Offender status."). Thus, his career-offender claims are procedurally defaulted.

A defaulted claim is barred from the Court's collateral review *unless* the petitioner can demonstrate cause for the procedural default and actual prejudice from the failure to appeal, or that enforcing the procedural default would lead to a fundamental miscarriage of justice, such as the conviction of an innocent person. *See Farmer v. United States*, 867 F.3d 837, 842 (7th Cir. 2017); *Delatorre*, 847 F.3d at 843 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)).

Miller makes no argument for actual innocence. Turning to the cause-and-prejudice standard, to excuse a procedural default, a petitioner must demonstrate both (1) good cause for his failure to raise the defaulted claim before collateral review and (2) actual prejudice stemming from the violations alleged. *Theodorou v. United States*, 887 F.2d 1336, 1340 (7th Cir. 1989). Miller fails to establish either. Therefore, Miller's claims that he is not a career offender are procedurally defaulted.

### 1. Miller Fails to Show Cause

Examining his *pro se* § 2255 filings liberally, Miller attempts to establish "cause" by arguing that his failure to raise these arguments earlier was because the cases on which he relies onto challenge the enhancement "had not become final." (Dkt. 1) at 5, 7, 9. However, as the Court addresses below, this argument fails because all four cases were "final" by June 26, 2015 at the latest; Miller last resentencing occurred on January 6, 2016, and he filed his Third Appeal on January 28, 2016.

In his first attack on Wis. Stat. 961.41, Miller relies on *Descamps v. United States*, 570 U.S. 254 (2013) to argue that because the word "delivery" is contained in the statute, but the same term is not contained in § 4B1.2, under the formal categorical approach, the Wisconsin law prohibits a range of conduct that is broader than the definition of "controlled substance offense" in the career offender guidelines. *Descamps* was decided on June 20, 2013. As relevant to his proceedings, Miller filed his Second Appeal on November 27, 2013; he was given appellate counsel on January 13, 2014, and his appellate brief was submitted on February 9, 2015. Accordingly, Miller had the benefit of *Descamps* long before any appellate brief in his Second Appeal was filed (and by extension, even longer before his 2016 Resentencing or his Third Appeal), yet he failed to raise this argument to this Court or the Seventh Circuit on any occasion

prior to the present Petition. Thus, although *Descamps* itself was not available during Miller's First Appeal, it was available to him for the remainder of his proceedings.

Miller's second challenge to the inclusion of Wis. Stat. 961.41 as a qualifying offense in support of the career offender enhancement is that the statute is unconstitutionally vague under the reasoning set forth in *Johnson v. United States*, 135 S. Ct. 2551 (2015). (Dkt. 1) at 16; (Dkt. 11) at 2. *Johnson* was decided on June 26, 2015. Miller's 2016 Resentencing occurred on January 6, 2016, and he filed his Third Appeal on January 28, 2016. Miller did not raise arguments based on *Johnson* at either time. Accordingly, the timing of the *Johnson* opinion does not provide Miller with grounds to excuse his procedural default.

Miller's third challenge to the career offender enhancement is that he was charged with a miniscule amount of drugs, which, if he had been sentenced under the federal sentencing guidelines for possessing that miniscule amount, he would have received probation. For this proposition, Miller relies on *Moncrieffe v. Holder*, 569 U.S. 184 (2013) and *Lopez v. Gonzalez*, 549 U.S. 47 (2006). *Lopez* was issued on December 5, 2006—long before any of Miller's three direct appeals and even four years before Miller was sentenced for the first time. As such, Miller cannot in good faith posit that *Lopez* was unavailable to him at any point in his criminal proceedings. Further, like *Descamps*, *Moncrieffe*—published on April 23, 2013—was available to Miller well in advance of his Second Appeal, 2016 Resentencing, and Third Appeal.

As an additional point, the record on Miller's Third Appeal demonstrates not only that all three challenges to his Wisconsin conviction were available to him at that time, but also that he had already considered these challenges and articulated them in an identical fashion. Specifically, in his April 11, 2016 Motion to Dismiss Appeal filed with the Appellate Court, Miller included an "Acknowledgement of Attorney's Motion to Dismiss and Consent to Dismiss

the Appeal," to which he attached a handwritten affidavit and two typewritten pages laying out the four grounds Miller has raised in the instant proceeding: three challenges to the Wisconsin conviction and its use in his career-offender enhancement and one claim of ineffective assistance of counsel. *See United States v. Miller*, No. 16-1169 (Dkt. 11 at 5–6) (7th Cir.). Accordingly, Miller elected not to present his career-offender challenges to the Seventh Circuit at that time and chose instead to "raise claims of ineffective assistance of counsel relating to his conviction, sentence, and first two appeals" by proceeding with a § 2255 petition instead. *Id.* at 1, 3–4.

Finally, the Court notes for completeness that even if the four specific cases on which Miller relies were not available for him to use in his proceedings before this Court or the Seventh Circuit, his argument for cause would still fail. Although the Supreme Court has recognized that "a claim that 'is so novel that its legal basis is not reasonably available to counsel' may constitute cause for a procedural default," *Bousley*, 523 U.S. at 622 (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)), the novelty standard is a high one. The petitioner's counsel must have had "no reasonable basis upon which to formulate" the question now raised. *Reed*, 468 U.S. at 14. But the categorical approach to predicates discussed in *Descamps* did not constitute a change in the law that was not available to Miller at the time of his first sentencing or First Appeal. *See Descamps*, 570 U.S. at 260 ("Our caselaw explaining the categorical approach and its 'modified' counterpart all but resolves this case."). Further, cases involving defendants who challenged career-offender designations on the ground that prior state-court convictions were not "controlled substance offenses" as defined by §§ 4B1.1 and 4B1.2 of the sentencing guidelines are not novel or new. *See, e.g., United States v. Adams*, 451 F. App'x 576, 578 (7th Cir. 2011) (denying challenge to conviction under California, Cal. Health & Safety Code § 11352(a) that criminalizes the transportation as well as the possession and distribution of narcotics as not qualifying as a

controlled substance offense for purposes § 4B1.2(b)); *United States v. Black*, 636 F.3d 893, 899 (7th Cir. 2011); *United States v. Atkinson*, 979 F.2d 1219, 1222 (7th Cir. 1992); *Gibbs v. United States*, 655 F.3d 473, 476 (6th Cir. 2011); *United States v. Adkins*, 961 F.2d 173, 174 (11th Cir. 1992) (per curiam); *United States v. Gaitan*, 954 F.2d 1005, 1008 (5th Cir. 1992); *United States v. Galloway*, 937 F.2d 542, 549 (10th Cir. 1991) (upholding a defendant's challenge to his career-offender classification under § 4B1.1 on the grounds that "[o]ne of the predicate felonies cited by the district court was a prior state conviction for possession" and "did not contain an element of intent to manufacture, import, export, or distribute"). Although none of these cases deal specifically with Wis. Stat. § 961.41, they demonstrate that the requisite bases on which Miller's career-offender claims rest were available to him throughout.

Seeing then that the four cases on which he bases his career-offender challenges were all "final" by the time of Miller's 2016 Resentencing and Third Appeal and that he affirmatively chose not to present the same career-offender arguments to the Seventh Circuit at the time of his Third Appeal, the timing and finality of those cases do not establish cause to excuse Miller's procedural default.

### 2. Miller Fails to Show Prejudice or Miscarriage of Justice

Even if he had established cause, Miller fails to establish—or even argue—that he has suffered actual prejudice stemming from the violations alleged in the defaulted claims or that enforcing the procedural default would lead to a fundamental miscarriage of justice.

First, and most significantly, because the Sentencing Guidelines are advisory rather than mandatory, arguments concerning alleged court error in sentence calculations are not cognizable on collateral review in a § 2255 motion. *See generally Hawkins*, 706 F.3d at 824–25 (holding that an erroneous determination that a petitioner is a career offender is not a cognizable error);

*see also United States v. Coleman*, 763 F.3d 706, 708-09 (7th Cir. 2014), *as amended on denial of reh'g and reh'g en banc* (Oct. 16, 2014) ("[W]e held in *Hawkins* that the error in calculating the Guidelines range did not constitute a miscarriage of justice for § 2255 purposes given the advisory nature of the Guidelines and the district court's determination that the sentence was appropriate and that it did not exceed the statutory maximum."); *Welch v. United States*, 604 F.3d 408, 412 (7th Cir. 2010) ("[D]eviations from the Sentencing Guidelines generally are not cognizable on a § 2255 motion."); *Jordan v. United States*, 2017 WL 4035722, at *4 (C.D. Ill. Sept. 13, 2017) (purported error in designating petitioner a career offender based on a conviction for domestic battery is simply not cognizable in a § 2255 petition). Thus, even aside from any default, these claims are not properly raised in this § 2255 proceeding. If at all, these issues should have been presented on direct appeal, and the instant § 2255 motion is not a substitute for such a proceeding. *See Varela*, 481 F.3d at 935.

In any case, Miller's arguments do not demonstrate that he has suffered any prejudice. Miller's *Descamps*-based argument asserts that his drug offense can no longer be considered a predicate because Wisconsin includes the possibility of conviction based on *delivery* of cocaine, which is broader than the Guidelines definition of "controlled substance offense." (Dkt. 1) at 16; (Dkt. 11) at 2. The key phrase in § 4B1.2(b) is "manufacture, import, export, distribution, or dispensing." As with most other recidivist enhancements, these words are applied to the elements of the crime of conviction, not to what the accused did in fact. *See, e.g., Mathis v. United States*, 136 S. Ct. 2243 (2016); *Descamps*, 570 U.S. 254. Here, The definition that underlies the offense established by Wis. Stat. § 961.41(1)(cm) states that "[d]eliver" or "delivery" "means the actual, constructive or attempted transfer from one person to another of a controlled substance or controlled substance analog, whether or not there is any agency

relationship." Wis. Stat. § 961.01(6). Thus, any conduct meeting the state's definition of "delivery" comes within § 4B1.2(b) because "'transfer' is just another word for distribute or dispense." *United States v. Redden*, 875 F.3d 374, 375 (7th Cir. 2017) (reaching this conclusion regarding analogous Illinois law terms and holding that it would be "frivolous for counsel to argue that Redden is not a career offender"); *see also Shields v. United States*, 2017 WL 2350126, at *2 (W.D. Wis. May 30, 2017) (rejecting a § 2255 challenge to use of violation of Wis. Stat. § 961.41(1m)(cm) as career-offender predicate).

Miller's *Johnson*-based argument contends that his drug offense can no longer be considered a predicate because Wis. Stat. 961.41(1)(cm)1g is unconstitutionally vague because an offender can be charged with even a "miniscule amount such as petitioner 0.3mg cocaine base." (Dkt. 1) at 16; (Dkt. 11) at 2. Of course, Miller was not sentenced as an Armed Career Criminal, he was sentenced as a career offender. But the fact that the Wisconsin statute criminalizes the manufacture, distribution, or delivery of any amount of cocaine does not render the statute vague nor does it somehow bring Miller's case within the ambit of *Johnson*, especially when he was not sentenced as an armed career criminal nor does his sentence implicate a residual clause of any kind. *Johnson*, 135 S. Ct. 2551 (holding that the residual clause of the Armed Career Criminal Act is unconstitutionally vague). Miller also appears to argue that Wis. Stat. § 961.41(1)(cm)1g is unconstitutionally vague because an arresting officer can choose to charge a suspect with possession—a misdemeanor under a separate statute—instead of charging manufacture, distribution, or delivery under § 961.41(1)(cm)1g. But the argument that an arresting officer and prosecutor can charge a different crime does not serve to highlight any vagueness whatsoever in § 961.41(1)(cm). *Cf. Sharp v. United States*, 2016 WL 4507395, at *1 (W.D. Wis. Aug. 26, 2016) (petitioner brought *Johnson* claim and explicitly did

not argue that 2001 offense of manufacture or delivery of 5 grams or less of cocaine in violation of Wis. Stat. § 961.41(1)(cm)1 did not qualify as a career offender predicate).

Miller's last challenge to the enhancement is that his drug offense should not be considered a predicate because the same crime—involving a very small amount of drugs—would not qualify as a felony under federal law. (Dkt. 1) at 17; (Dkt. 11) at 3. Miller contends that if he had been charged federally for this offense, he likely would have received probation under the Guidelines because his offense level would have been so low. But this is not how "controlled substance offenses" are analyzed. Put differently, unlike in *Moncrieffe*, which involved the Immigration and Nationality Act, *see* 569 U.S. at 188, nothing in the Guidelines pulls the Controlled Substances Act into the definition of a "controlled substance offense." Instead, under the Guidelines a "controlled substance offense" simply includes any distribution crime punishable by more than a year in prison. *See* U.S.S.G. §§ 4B1.1 cmt. n.1, 4B1.2(b); *United States v. Hudson*, 618 F.3d 700, 703 (7th Cir. 2010). Similarly, a "prior felony conviction" means a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed. U.S.S.G. § 4B1.2 cmt. n.1. The version of Wis. Stat. § 961.41(1)(cm)1 under which Miller was convicted provided for up to 10 years in prison; Miller received a 3-year sentence for his offense. Thus, even if Miller *could* have received less than one year's imprisonment at the time of his Wisconsin offense, the relevant statute provided for imprisonment for a term exceeding one year.

In sum, Miller has defaulted on his career-offender claims without any viable excuse; and regardless, these claims are not cognizable for purposes of Miller's § 2255 petition and they also lack merit.

## II.     Ineffective Assistance of Counsel

Kent Carlson and John Beal represented Miller prior to and during his first trial in 2009.
Linda Babich represented him at his first sentencing and Joshua Buchman and Peter Allport
represented Miller during the First Appeal.  Miller then represented himself during his retrial in
2013 and at his second sentencing.  Next, Sara Varner represented Miller in his Second Appeal
and at the 2016 Resentencing.  Finally, Peter Henderson represented Miller in the Third Appeal.
(Dkt. 1) at 13.  Out of this mass of attorneys, Miller now specifically contends that Carlson, Beal,
his, and Varner's performances were constitutionally deficient, although he generally remains
dissatisfied with all of his representation, including his self-representation.  *Id.* at 18 (requesting
a hearing to "prove . . . that every Attorney/lawyer appointed to me by this Court including
myself was ineffective . . . .").

### A.     Miller Fails to Show Ineffective Assistance of Trial Counsel

Miller first argues that his trial counsel provided constitutionally ineffective assistance of
counsel.  To establish ineffective assistance of trial counsel in violation of the Sixth Amendment,
Miller must show that (1) his trial attorney's performance "fell below an objective standard of
reasonableness," informed by "prevailing professional norms" and (2) "but for counsel's
unprofessional errors the result of the proceeding would have been different."  *Strickland v.
Washington*, 466 U.S. 668, 688 (1984).  Both components of the test must be satisfied; "the lack
of either is fatal."  *Eddmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996).

"To reflect the wide range of competent legal strategies and to avoid the pitfalls of review
in hindsight, [the Court's] review of an attorney's performance is highly deferential and reflects
a strong presumption that counsel's conduct falls within the wide range of reasonable
professional assistance."  *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014) (citation

omitted); *see also Delatorre*, 847 F.3d at 845 (courts apply a "'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance.") (citation omitted). "The central question in this analysis is not whether counsel's conduct 'deviated from best practices or most common custom,' but instead, 'whether an attorney's representation amounted to incompetence under prevailing professional norms.'" *Delatorre*, 847 F.3d at 845 (quoting *Sussman v. Jenkins*, 636 F.3d 329, 349–50 (7th Cir. 2011)). Trial counsel's "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," and trial counsel's "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91.

If the Court finds an attorney's representation to be deficient, it must then decide, under the prejudice prong of *Strickland*, whether there is "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.'" *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009) (quoting *Strickland*, 466 U.S. at 690, 694); *see also Lee v. Avila*, 871 F.3d 565, 571 (7th Cir. 2017). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Rastafari v. Anderson*, 278 F.3d 673, 688 (7th Cir. 2002). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, "[c]ounsel's errors must have been 'so serious as to deprive the defendant of a fair trial.'" *Carter v. Butts*, 760 F.3d 631, 635 (7th Cir. 2014) (quoting *Strickland*, 466 U.S. at 693). Where counsel's alleged error occurred during the sentencing phase, the petitioner must show that there was "a reasonable probability that he received additional prison

time because of counsel's error." *United States v. Jaimes–Moreno*, 2017 WL 8209106, at \*10 (N.D. Ill. Dec. 11, 2017) (citing *Glover v. United States*, 531 U.S. 198 (2001)).

### 1.    Failure to Investigate Borko's Testimony in Miller's First Trial

Looking first at Miller's issues with Carlson and Beal's performance, he generally alleges that they failed "to investigate and call witnesses whom [sic] recanted their earlier trial statements." (Dkt. 1) at 17; (Dkt. 11) at 3. He specifies that this argument concerns Chanda Borko, who testified before the grand jury and at his first trial that "she observed [Miller] with a weapon two months prior to the search of [his] home." (Dkt. 1) at 17; (Dkt. 11) at 3. According to Miller, Borko later recanted her testimony.

The basis for Miller's claim that Borko recanted her testimony is an affidavit sworn by Borko on March 13, 2013 (the "Borko Affidavit"), which was nearly four years after his first trial and a few months prior to his second trial. The affidavit alternates between the first and third person, sometimes within the same sentence. *See* Borko Affidavit, (Dkt. 1) at 19–20 ("I told the Police that when I saw the gun it was at her apartment and that Shariff was not the person she saw with the gun."). The Borko Affidavit pertains almost entirely to statements she made to police officers at the Waukegan Police Station. *Id.* at 19. Borko also states in the Affidavit that she received preparation by agents before her trial testimony on "how to say what needed to be said," but she claims that she was not instructed on what to say, and claims that she never received additional money that she was allegedly promised by the government to cover her relocation expenses in the wake of a threatening phone call related to her trial testimony. *Id.*

At Miller's first trial in May 2009, Borko's testimony focused on her observations of a firearm in Miller's possession prior to his arrest by Waukegan police, not the substance of her statements to law enforcement the night that Miller was arrested. (Dkt. 8) at 13. Even if Miller's attorneys could have discovered the information contained in her 2013 Affidavit before his first

trial, it is difficult to understand what they could have done with it, since it does not appear to materially contradict her trial testimony. Miller does not identify what specific steps his attorneys failed to take, and since the Affidavit does not appear to contradict Borko's testimony at trial, the Court does not find that failure to "investigate" Borko constitutes performance that falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688.

Having disposed with the first prong of *Strickland*, the Court also concludes that failure to "investigate" Borko or otherwise plumb potential inconsistencies relating to her later-created Affidavit did not prejudice Miller. *See Strickland*, 466 U.S. at 694. As the government notes, Miller was acquitted of the 18 U.S.C. § 924(c) charge at his second trial. Because Borko's affidavit does not discuss her knowledge of Miller's possession, manufacture, or distribution of cocaine base, its contents could only prejudice Miller with respect to his conviction under 18 U.S.C. § 922(g)—the felon-in-possession count. But here, Miller fails to show that the result on this count would have been different had his first attorneys further investigated Borko and discovered the Affidavit statements for trial.

Criminal liability under the felon-in-possession statute does not require the possession of two or more firearms; the statute makes it illegal for "any person . . . convicted [of] a crime punishable by imprisonment for a term exceeding one year . . . to possess [] *any firearm or ammunition* . . . ." 18 U.S.C. § 922(g) (emphasis added). In her Affidavit, Borko discusses what she told officers from the Waukegan Police Department about one specific gun. *See* Borko Affidavit, (Dkt. 1) at 19 ("I was shown a picture of a gun by the Police . . . when I saw the gun it was at [my] apartment . . . ."). Coincident with Miller's arrest in 2008, law enforcement recovered from his apartment one handgun, two rifles (including a Remington rifle bearing Miller's fingerprint) and ammunition in various calibers. (Dkt. 8) at 1. Thus, even if Borko's

Affidavit somehow disqualified all other evidence relevant to the one firearm she describes discussing with the Waukegan Police, that would not change the fact that law enforcement recovered multiple firearms *and* ammunition from Miller's residence. To the extent Borko's Affidavit would have any relevance to the question of whether Miller possessed one of the three guns recovered from his residence, alleged failure on the part of Miller's counsel to investigate the matter further cannot be considered a "but-for" cause of his conviction under 18 U.S.C. § 922(g). For these reasons, Miller's ineffective assistance of trial counsel claim for the failure to investigate Borko fails. To the extent this claim pertains to other witnesses or potential witnesses, Miller fails to allege any specifics concerning who such individuals are and his claim thus fails to meet the *Strickland* standard.

### 2.     Failure to Challenge the Search Warrant under *Franks*

The next issue Miller raises—at length through his reply brief only—with respect to Carlson and Beal is that they failed to move for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978) to challenge the warrant that supported the search of his residence in April 2008. By way of background, in October 2008, Miller (through Carlson) moved to suppress the evidence obtained during the execution of the search warrant at Miller's residence on the basis that the application for the search warrant did not establish probable cause. *United States v. Miller*, No. 08 CR 629 (Dkt. 19) (N.D. Ill.). After the Court denied the motion, Miller (through Beal) moved for reconsideration, which the Court denied after receiving argument. Miller again raised this issue (through Beal) in his motion for a new trial, specifically challenging "the reliability and sufficiency of the information the CI provided during the warrant application process based on the lack of detail included in the sworn Complaint." The Court concluded that its denial of the motion to suppress was not error, *Miller*, 2009 WL 3156740, at *6; the Seventh Circuit affirmed

this ruling, because the police officers who executed the search warrant relied in good faith on a judge's decision to issue the warrant. *Miller*, 673 F.3d at 693–94. Now, Miller explicitly does *not* argue "that counsel should have did more to challenge the denial of his motion to suppress. But that counsel should have requested a *Franks* hearing, to prove that the warrant was lacking probable cause, due to the insufficiency of the affidavit." (Dkt. 25) at 14.

A *Franks* hearing examines whether police officers made false statements to obtain a search warrant. In order to obtain a *Franks* hearing, a defendant "must make a 'substantial preliminary showing' that: (1) the affidavit contained a material false statement; (2) the affiant made the false statement intentionally, or with reckless disregard for the truth; and (3) the false statement was necessary to support the finding of probable cause." *United States v. Smith*, 576 F.3d 762, 765 (7th Cir. 2009) (citation omitted).

Based on trial counsel's repeated challenges to the warrant, Miller has failed to establish that his trial counsel's performance fell below an objective standard of reasonableness to satisfy the first *Strickland* prong. *See Tucker v. United States*, 889 F.3d 881, 884 (7th Cir. 2018). Indeed, Miller makes no attempt to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689. "Vigorous representation of a criminal defendant often entails difficult choices that competent (indeed, first-rate) defense attorneys might make differently." *Killingsworth v. Bensko*, 386 F. Supp. 2d 949, 960 (N.D. Ill. 2005). The record reflects that counsel continued to challenge the validity of warrant throughout Miller's proceedings. That they did not raise the particular ground now suggested by Miller does not establish that the earlier actions were incompetent, and his claim for ineffective-assistance of counsel on this issue is without merit. *See United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991) (failure to pursue arguments that "are clearly destined

to be unsuccessful" does not constitute ineffective assistance of counsel) (citing *United States v. Madewell*, 917 F.2d 301, 305 (7th Cir. 1990)); *Hale v. United States*, 2010 WL 2921634, at *32 (N.D. Ill. July 22, 2010) (counsel's decision to pursue a different defense could not be characterized as ineffective assistance).

Miller cannot satisfy *Strickland*'s prejudice prong, either. Miller filed numerous pretrial motions during his proceedings on remand, including a motion for a *Franks* hearing on substantially the same bases he raises now, which the Court denied. *United States v. Miller*, No. 08 CR 629 (Dkt. 301 at 25–28) (N.D. Ill.). The Court again considered and denied Miller's *Franks*-hearing arguments on his motion for a new trial following his second trial. *United States v. Miller*, No. 08 CR 629 (Dkt. 336) (N.D. Ill.). Significantly, in this ruling, while dismissing Miller's *Franks*-challenge to the warrant as beyond the scope of the remand because it had not been raised in the earlier proceedings, the Court still noted that Miller's argument concerning the necessity of a *Franks* hearing was meritless because he had failed to provide any "basis whatsoever for his claim that Detective Rivera made false statements in his affidavit let alone made false statements intentionally or with reckless disregard for the truth." *Id.* at 10; *see also United States v. Miller*, 2013 WL 6153005, at *5 (N.D. Ill. Nov. 22, 2013); *Martin v. United States*, 2017 WL 228179, at *5 (S.D. Ill. Jan. 19, 2017) (where petitioner did not made any showing, let alone a substantial showing, that a false statement was included in warrant application, petitioner's counsel was not ineffective for failing to request a *Franks* hearing). Accordingly, Miller has failed to show any prejudice.

In support of his request for habeas relief on this ground, Miller cites to *Cabrera v. Hinsley*, 324 F.3d 527 (7th Cir. 2003) for the proposition that a federal habeas claim could be raised on a Fourth Amendment violation if the defendant had not had the opportunity to present

his Fourth Amendment defense at trial. (Dkt. 25) at 13. But as is evident from the record, Miller had the opportunity to present his Fourth Amendment defense in all aspects of trial and on appeal. *See Cabrera*, 324 F.3d at 532 (Cabrera had a "full and fair opportunity to litigate" his Fourth Amendment claim where he raised the issue in a suppression hearing prior to trial, in the appellate court, and to the Illinois Supreme Court). Although his first appointed counsel elected not to challenge the warrant under *Franks*, that decision does not render counsel's performance constitutionally deficient, particularly when counsel consistently and aggressively challenged the warrant on other grounds. In addition, despite the procedural deficiencies, the Court considered and rejected Miller's numerous arguments for a *Franks* hearing on remand. Thus, the Court rejects this aspect of Miller's ineffective assistance of trial counsel claim.

### 3. Ineffective Representation of Himself

Next, Miller alleges that his own performance during his retrial was ineffective. (Dkt. 1) at 18 ("I am not and never have been attorney, and my representation of self was ineffective."). However, in support of this allegation, Miller does not point to any deficient areas or specific issues. Regardless, it is a well-established principle of law that "poor self-representation alone does not amount to a due process violation." *United States v. Banks*, 828 F.3d 609, 617 (7th Cir. 2016); *see also Faretta v. California*, 422 U.S. 806, 834 (1975) ("a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of "effective assistance of counsel."). Whatever the deficiencies of Miller's self-representation, they do not by themselves entitle him to Constitutional relief. Miller was repeatedly warned about his self-representation, he refused to work with appointed counsel, and now seeks relief for his voluntary choice. Miller's choice was voluntary and he cannot now claim he was harmed by it. *See United States v. Miller*, No. 08 CR 629 (Dkt. 207) (N.D. Ill.)

(granting Miller's July 26, 2012 oral motion to withdraw Joshua B. Adams as counsel); *United States v. Miller*, No. 08 CR 629 (Dkt. 229) (N.D. Ill.) (Nov. 19, 2012 motion by counsel Charles J. Aron to withdraw due to a deterioration in the attorney-client relationship that prevented Aron from continuing to represent Miller); *United States v. Miller*, No. 08 CR 629 (Dkt. 242) (N.D. Ill.) (Jan. 16, 2013 Position Paper Regarding the Representation Issue filed by counsel Gary Ravitz, indicating that "there have been repeated and serious disagreements in the past between Mr. Miller and his lawyers regarding the management of his defense" and noting that "it appears that [Mr. Miller] understands the dangers and disadvantages of self-representation."); *United States v. Miller*, No. 08 CR 629 (Dkt. 243) (N.D. Ill.) (ordering that "[b]ased upon the fact that there is a conflict between counsel Ravitz and the defendant, the defendant Shariff Miller will be *pro se* and represent himself," but requiring that Ravitz continue to serve as standby counsel); *United States v. Miller*, No. 08 CR 629 (Dkt. 270) (N.D. Ill.) ("Defendant knowlingly [sic] and voluntarily waives his right to counsel and is allowed to proceed *pro se*."); *United States v. Miller*, No. 08 CR 629 (Dkt. 301) (N.D. Ill.) ("The Court has gone to unprecedented lengths in this case to arm Miller with adequate legal representation for his criminal trial," but he had evidenced an inability to take the advice of the eight attorneys who had attempted to represent him up to that point based on "his paranoia that every single one of his criminal defense attorneys was aiding the prosecution behind his back," which caused Miller to either fire or forced each of his Court-appointed attorneys to withdraw based on ethical conflicts); *see generally United States v. Miller*, No. 08 CR 629 (Dkt. 301 at 3–23) (N.D. Ill.) (describing at great length Miller's representation history, including his inability to work with his previous attorneys and the Court's determination that he had thus knowingly and voluntarily waived his right to counsel and would move forward as a *pro se* criminal defendant).

### 4. Miller Failed to Object to the Career-Offender Enhancement at the 2016 Resentencing

Last, Miller alleges that Varner's representation at the time of his 2016 Resentencing was ineffective. In particular, he alleges that Varner refused to object to his career offender status at the 2016 Resentencing and she failed to file a sentencing memorandum. (Dkt. 11) at 4. His claim that Varner failed to file a sentencing memorandum is easily disposed of by the record in this case. On December 22, 2015, Varner filed a 21-page, single-spaced sentencing memorandum authored by a licensed clinical social worker employed by Varner's office as a "Mitigation Investigation Specialist." *See United States v. Miller*, 08 CR 629 (Dkts. 386, 386-1) (N.D. Ill.). Not only that, during the 2016 Resentencing, Varner argued at length (12 pages of the 39-page transcript) regarding the information contained in the sentencing memorandum in advocating for a reduced sentence. *United States v. Miller*, 08 CR 629 (Dkt. 400) (N.D. Ill.) (1/6/16 Sentencing Hr. Tr.). With regard to Varner's failure to challenge Miller's status as a career offender, the Court interprets Miller's argument to be that she should have challenged the use of his Wisconsin conviction as a qualifying offense for the reasons set forth by Miller in his Petition.

With this in mind, even in light of Miller's allegations Varner refused to present his arguments, it was not objectively unreasonable for Varner to fail to object to the career-offender enhancement to Miller's Guidelines range. As was apparent at the 2016 Resentencing, Varner's arguments focused on the personal changes Miller had made: "He is not the Shariff who was here in front of you last time. He's not the angry, oppositional, defiant person who you've sentenced twice before." *United States v. Miller*, 08 CR 629 (Dkt. 400) at 23:5–7 (N.D. Ill.). Varner's sentencing strategy thus focused on the 18 U.S.C. § 3553(a) factors, and in so doing, she also took into account the fact that the Court had already at Miller's previous sentencings

varied downward from the career-offender Guidelines. *Id.* at 23:20–24. *See United States v. Booker*, 981 F.2d 289, 293 (7th Cir. 1992) ("[I]f a reasonable tactical justification exists for counsel's actions, we will not find counsel's performance deficient."); *United States v. Hunter*, 2018 WL 497371, at *4 (N.D. Ill. Jan. 22, 2018) ("Because the decision to forego a challenge to the career offender designation was, under the circumstances, a reasonable strategy, [petitioner's] ineffective assistance of counsel claim fails.").

But even if Varner's performance was constitutionally deficient in relation to the career-offender enhancement, Miller cannot establish that he was prejudiced under the second prong of *Strickland* because any such alleged error did not lead to a longer sentence. *See Glover*, 531 U.S. 198; *United States v. Ruzzano*, 247 F.3d 688, 696–97 (7th Cir. 2001) (a defendant must still show a reasonable probability that he received additional prison time because of counsel's error). Specifically, neither Babich nor Miller himself had challenged his career-offender status at his two prior sentencings and they were not raised in Miller's First or Second Appeals. Because "any issue that could have but was not raised on appeal is waived and thus not remanded," *United States v. Husband*, 312 F.3d 247, 250 (7th Cir. 2002), Miller's stated challenges to the career-offender enhancement at the 2016 Resentencing could likely have been deemed waived. In any event, considering that Miller appears to rely on caselaw that was rendered during his criminal proceedings, Miller's arguments concerning Wis. Stat. § 961.41 lack merit for the reasons already explained above, and therefore he has failed to establish any prejudice on account of Varner's omissions at the 2016 Resentencing. *Lawson*, 947 F.2d at 853 (failure to pursue arguments that "are clearly destined to be unsuccessful" does not constitute ineffective assistance of counsel). Accordingly, Miller's ineffective assistance of trial counsel argument based on the sentencing guidelines is unavailing.

**B.      Miller Fails to Show Ineffective Assistance of Appellate Counsel**

Miller also argues that Varner's performance during his Second Appeal was constitutionally ineffective.  As with ineffective assistance of trial counsel claims, courts apply the two-prong test set forth in *Strickland* to evaluate the effectiveness of appellate counsel. *Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015).  Under the *Strickland* performance prong, an appellate counsel's performance is constitutionally deficient if counsel fails to appeal an issue that is obviously and clearly stronger than the claims counsel did raise on appeal.  *Walker v. Griffin*, 835 F.3d 705, 709 (7th Cir. 2016) ("Appellate ineffective-assistance claims require the reviewing court to look at the issue that appellate counsel failed to raise, and determine whether that issue was 'obvious and clearly stronger' than issues that appellate counsel did raise."); *see also Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009).  In this context, appellate counsel need not raise every non-frivolous claim, but should select among claims to maximize the likelihood of success on appeal.  *See Smith v. Robbins*, 528 U.S. 259, 288 (2000); *Makiel*, 782 F.3d at 897. To establish the *Strickland* prejudice prong with regard to his appellate counsel, Miller must show that there is a reasonable probability that the issues appellate counsel did not raise would have changed the outcome of his appeal.  *Miller v. Zatecky*, 820 F.3d 275, 276 (7th Cir. 2016); *Richardson v. Lemke*, 745 F.3d 258, 273 (7th Cir. 2014).

Miller argues that Varner's representation of him during the Second Appeal was ineffective because Varner allegedly filed a late *Anders*[1] brief in his Second Appeal, she refused to present Miller's arguments, and she also failed to investigate the inconsistencies in Borko's statements.  (Dkt. 1) at 17.  As an initial matter, the appellate record demonstrates that the appellant brief in Miller's Second Appeal was timely filed after multiple requests for extensions of the filing deadline had been granted, so Miller has not demonstrated any failing by Varner in

---

[1] *Anders v. California*, 386 U.S. 738 (1967).

this regard.  Anyway, the thrust of Miller's argument appears to be targeted at Varner's filing of a limited *Anders* brief.

In *Anders*, the Supreme Court held that appointed counsel must, when faced with a request to file an appeal that counsel believes wholly frivolous, advise the court of the frivolous nature of the appeal and request an opportunity to withdraw, attaching "a brief referring to anything in the record that might arguably support the appeal."  386 U.S. at 744.

Here, Miller complains that Varner's *Anders* brief that did not include each and every argument Miller wished to present to the Court of Appeals at that time.  Specifically, Miller argues that Varner failed to:  (1) argue for evidence suppression on the grounds that that Miller's residence was searched either without a warrant or without a warrant supported by probable cause because the warrant obtained relied on statements made by an undisclosed confidential informant that were unreliable and Miller was not given the opportunity to confront the informant at trial; (2) argue that this Court improperly answered jury questions after the trial; (3) challenge the Court's rulings concerning *Brady* material that was turned over late (information about payments to Borko); (4) challenge the Court's ruling denying Miller's motion for disclosure of the confidential informant; (5) challenge the Court's ruling on Miller's *Franks* motion; and (6) challenge the Court's denial of Miller's motion to dismiss the indictment on prosecutorial-misconduct grounds.  (Dkt. 11) at 4–6.

To start, Miller has not shown that Varner was objectively unreasonable in filing the limited *Anders* brief that she submitted.  *See United States v. Miller*, No. 13-3657 (Dkt. 56) (7th Cir.) (arguing that the district court erred when it imposed conditions of supervised release).  The record in Miller's Second Appeal reflects that after Varner was appointed, Miller continued to submit *pro se* documents to the court, which it rejected.  The court eventually ordered Miller to

explain in writing whether he wanted to proceed with his appeal without counsel. *United States v. Miller*, No. 13-3657 (Dkts. 38, 40) (7th Cir.). After considering Miller's submissions wherein he requested different counsel, the Seventh Circuit denied his request and kept Varner on the case. But in light of the apparent difficulties between Miller and Varner, Varner moved for the court to accept a "hybrid brief," raising an issue of legal merit identified by Varner but also including a number of substantive issues raised by Miller in his *pro se* submissions. Varner represented that she had "identified and considered a number of substantive issues and considered those raised by Mr. Miller in his submission on April 25, 2015. Counsel has deemed these issues frivolous." *United States v. Miller*, No. 13-3657 (Dkt. 52) (7th Cir.). Despite Varner's attempt, the Seventh Circuit denied her motion to file a hybrid brief and directed that, because Miller did not elect to represent himself on appeal, Varner must "file an opening brief addressing any arguments that, in counsel's judgment, are worth raising." *United States v. Miller*, No. 13-3657 (Dkt. 54) (7th Cir.). Accordingly, based on her prior statement that she had only identified one meritorious issue, Varner properly filed the limited *Anders* brief. *Lawson*, 947 F.2d at 853. Strategic decisions like these, so long as they are made after a thorough investigation of law and facts, which Varner's filing indicates that they were, are "virtually unchallengeable." *Strickland*, 466 U.S. at 690.

Further, Miller has not shown that any alleged deficiency in Varner's brief prejudiced him—that the issues she did not raise would have changed the outcome of his appeals. To be sure, the *Anders* brief filed by Varner prompted the government to request that the Seventh Circuit "summarily reverse the judgment of the district court and to remand the case for resentencing" consistent with *Thompson*. Following this development, Miller was given a third sentencing hearing, and the Court further reduced Miller's sentence to 175 months in prison.

Following these events, Miller again had the opportunity to pursue an appeal. Although he initiated a Third Appeal, he ultimately elected not to pursue it. Under these unique circumstances, Miller has not shown that the inclusion of his seven additional arguments in his Second Appeal (at least two of which had already been ruled on by the Seventh Circuit in his First Appeal) would have changed the outcome of his appeals.

Miller's last complaint about Varner is that she failed to investigate the Borko situation and present argument concerning Borko to the Seventh Circuit during the Second Appeal. (Dkt. 11) at 6. For the same reasons just discussed, Miller arguments are unavailing because he cannot establish either that Varner's actions fell below the standard of reasonableness in light of the Seventh's Circuit's direction and her involvement with the matter or that Varner's failure to include arguments concerning Borko caused Miller prejudice as required under *Strickland*.[2]

## III.     Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), a petitioner does not have the absolute right to appeal a district court's denial of his § 2255 motion, instead, he must first request a certificate of appealability. *See Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003). A petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See id.* at 336; *Stechauner v. Smith*, 852 F.3d 708, 718 (7th Cir. 2017). Under this standard, Miller must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Here, Miller's career-offender challenges are not cognizable on collateral review on account of both the nature of these

---

[2] Because the motion, files, and records of this case conclusively show that Miller is not entitled to any relief under § 2255, the Court need not hold an evidentiary hearing. *See Perrone v. United States*, 889 F.3d 898, 910 (7th Cir. 2018); 28 U.S.C. § 2255(b).

claims and his procedural default. Further, Miller has not demonstrated that reasonable jurists would debate that his trial and appellate counsel were constitutionally ineffective or that his career-offender arguments have merit. In other words, Miller has not made a substantial showing of a denial of a constitutional right so no certificate will issue. The Court therefore declines to certify any issues for appeal. *See* 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For the reasons explained above, Miller's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Dkt. 1) is denied. The Court further declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

Hon. Virginia M. Kendall
United States District Judge

Date: August 19, 2018